UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

CRAIG YOUNG,

        Plaintiff,

    v.

NCO FINANCIAL SYSTEMS, INC. and FORSTER & GARBUS, LLP,

        Defendants.

COMPLAINT

CV12-1757

JURY TRIAL DEMANDED

FILED
CLERK
2012 APR 10 PM 1:28
U.S. DISTRICT COURT
EASTERN DISTRICT
OF NEW YORK

SUMMONS ISSUED
GERSHON, J
AZRACK, M.J.

## INTRODUCTION

1. This is an action for money damages and declaratory judgment, brought by an individual consumer for Defendants' violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA").

2. Specifically, this action relates to Defendants' illegal and abusive attempts to collect unauthorized amounts of money related to a consumer debt.

## JURISDICTION AND VENUE

3. Jurisdiction is conferred by 15 U.S.C. § 1692k and 28 U.S.C. § 1331.

4. Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and 2202.

5. Venue in this District is proper because the acts and transactions that give rise to this action occurred, in substantial part, in this district.

## PARTIES

6. Plaintiff, Craig Young, is a natural person who resides in Brooklyn, New York.

7. Mr. Young is a consumer as defined by 15 U.S.C. § 1692a(3).

- 1 -

8.  Defendant NCO Financial Systems, Inc. ("NCO") is a third-party debt collector and debt-buyer that buys purportedly past due/defaulted upon consumer debt from banks, credit card companies, and other debt buyers and attempts to collect those debts – either by itself or through its agents.

9.  NCO's principal purpose is the collection of debts; and it regularly attempts to collect debts alleged to be due another.

10. NCO, a Delaware Corporation, is engaged in the business of collecting debts in this state, is licensed by the New York City Department of Consumer Affairs as a debt collection agency, and maintains its principal place of business at 507 Prudential Road, Horsham, Pennsylvania, 19044.

11. In sum NCO is a debt collector as defined in the FDCPA §1692a(6).

12. Defendant Forster & Garbus, LLP ("F&G") is a New York law firm engaged in the business of collecting debts allegedly due to others, with its principal place of business located at 60 Motor Parkway, Comack, NY 11725.

13. Defendant F&G's principal purpose is the collection of debts, and it regularly attempts to collect debts alleged to be due another.

14. According to its website, F&G "strives to be the industry leader in ethical legal debt collection" and further warns consumers "that we are required, under Federal law, to advise you that we are debt collectors attempting to collect a debt. Any information we obtain will be used for that purpose."

15. F&G is licensed as a debt collection agency by the New York City Department of Consumer Affairs.

16. In sum, F&G is a debt collector as defined by 15 U.S.C. § 1692a(6).

## FACTS

17. On March 15, 2007, Mr. Young entered into two separate stipulations of settlement ("the stipulations") with SLM Education Loan Corporation ("SLM" or "Sallie Mae") to resolve the two lawsuits brought by SLM to collect on Mr. Young's defaulted student loans.

18. The lawsuits were both captioned <u>SLM Education Loan Corporation v. Craig E Young</u>, Civil Court of The City of New York, County of Kings with Index Nos. 159467/06 and 159466/06 respectively ("State Actions").

19. The State Actions were filed by SLM's counsel, Mel S. Harris & Associates, LLC, who signed the stipulations of settlement on SLM's behalf.

20. In the stipulations, SLM agreed to settle Mr. Young's defaulted loans by accepting $150/month payments on each loan.

21. The total stipulated principal balances to be repaid were $10,250.65 ("Loan 1") and $12,855.27 ("Loan 2").

22. SLM agreed that all future interest would be waived on the principal balance.

23. In the case of a default on payments under the Stipulations, SLM and Mr. Young agreed that 9% interest would accrue on the declining principal balances.

24. Thereafter, Mr. Young made his monthly payments as agreed to Mel S. Harris & Associates, LLC.

25. In late February 2011, concerned that he had never received any billing statements from Mel S. Harris regarding his previous payments, Mr. Young contacted that agency to inquire about it.

26. During a phone call in approximately late February or early March 2011, a representative

of Mel S. Harris told Mr. Young that Mel S. Harris was no longer able to accept the payments for SLM and directed Mr. Young to contact NCO.

27. Mr. Young then called NCO; and a representative of that agency told him that he would be contacted shortly with further directions on where to make payments.

28. By February 2011, having made 47 months of payments to Mel S. Harris & Associates, Mr. Young had paid a total of approximately $14,100 to SLM for the two loans. His total principal balances on the defaulted loans were approximately $3,200.65 for Loan 1 and $5,805.27 for Loan 2.

29. Mr. Young, however, received a letter from Defendant F&G dated April 11, 2011 that demanded he pay a balance of $9,247.86 on what appears to be Loan 2.

30. F&G's letter indicated that it was collecting the balance on behalf of "Sallie Mae, Inc As Administrator and Agent for SLM Education Credit Finance Corporation."

31. A few days after that, Mr. Young received a letter from NCO dated April 13, 2011, which demanded that Mr. Young make payments on the SLM loans and indicated that his total balance due for the 2 accounts was $20,017.68.

32. Deeply disturbed for demands for payment on balances that were far in excess of what Mr. Young actually owed under his stipulations with SLM, he contacted NCO to determine what had occurred.

33. During this phone call with NCO in or about April 2011, Mr. Young informed NCO of the stipulations of settlement with SLM and asked why NCO was demanding payment for a combined balance of over $20,000 after he had made over $14,000 in payments under the stipulations.

34. The NCO representative told Mr. Young that the stipulations he signed with Mel S.

Harris, as SLM's counsel, were not enforceable.

35. The NCO representative also told Mr. Young to continue making payments to NCO.

36. Mr. Young sent his usual monthly payments to NCO in April 2011.

37. By letter dated May 19, 2011, NCO made a second demand for payment to Mr. Young. This letter credited his $300 payment from April and reported a new balance of $19717.68.

38. Plaintiff notes that the balance of $19,717.68 is exactly $300 less than the balance of $20,017.68 that was stated in NCO's initial demand letter dated April 11, 2011, i.e. no interest is accruing on the account.

39. The last communication Mr. Young received from NCO is a letter dated June 30, 2011. This letter advised that Mr. Young's Sallie Mae accounts would be placed in a status to suppress further collection activity and further advised that inquiries regarding the debt should be directed to Sallie Mae.

40. Mr. Young followed up this letter by calling NCO to speak to a representative. In that phone call in or about early July, 2011, an NCO representative explained that Mr. Young should keep making monthly payments to NCO but direct all questions about the loans to Sallie Mae.

41. Mr. Young has continued to make monthly payments of $300 combined to NCO to be applied to the balances on his defaulted loans, but NCO has not sent him any balance statement since May 2011.

42. Mr. Young, a resident of Brooklyn, New York, lives on a limited income and is responsible for the care of his elderly and infirmed grandmother who suffers from Parkinson's Dementia and lives with him as his dependent. Despite this, Mr. Young has faithfully made all payments on his loans since 2007.

## CAUSE OF ACTION

## Violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*

43. Plaintiff repeats and re-alleges and incorporates by reference the foregoing paragraphs.

44. By undertaking the above referenced collection activities, Defendants violated 15 U.S.C. § 1692 *et seq.*

45. Specifically and without limitation, Defendants F&G and NCO have violated the FDCPA by outrageously misstating the amount of Plaintiffs balances and demanding payment on those false and inflated balances in violation of 15 USC § 1692e, 1692e(2)(A), 1692e(5), 1692e(10), 1692f and 1692f(1).

46. Specifically and without limitation, Defendant NCO violated the FDCPA by falsely advising Mr. Young that his agreement to settle the State Actions were not enforceable in violation of 15 USC § 1692 e, 1692e(2)(A), 1692e(5), 1692e(10), and 1692f.

47. As a result of Defendants' misconduct, Mr. Young has suffered actual damages, including: aggravation, anxiety, nervousness, emotional distress, fear, loss of concentration, irritability, embarrassment, humiliation, intimidation, indignation, and pain and suffering.

48. As a result of these violations, Mr. Young is entitled to statutory damages of up to $1,000.00, actual damages, and attorney's fees and costs.


**WHEREFORE,** plaintiff respectfully requests that this Court award:

    (a)    Declaratory Judgment that Defendants' conduct violated the FDCPA;

    (b)    Actual damages;

    (c)    Statutory damages;

    (d)    Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k; and

    (e)    Such other and further relief as law or equity may provide.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury as to all issues so triable.

Dated:   April 10, 2012
         New York, New York

                                    Respectfully Submitted,

                                    _____
                                    Peter T. Lane, Esq. (PL2009)
                                    Schlanger & Schlanger, L.L.P.
                                    *Attorney for Plaintiffs*
                                    343 Manville Road
                                    Pleasantville, NY 10570
                                    Telephone: 914-946-1981, ext. 109
                                    Facsimile: 914-946-2930
                                    Email: peter@schlangerlegal.com